Good morning again. Good morning. So now he didn't fall down, now he's got a repetitive trauma on the same day, right? No, it's actually three days later, Your Honor, but today he retired. Is this guy a professional plaintiff or what happens? Do you think the Commission got a little bit aggravated about this? In fairness, his prior work comp claims were all traumatic injuries. He had hit his head once before. I don't think that there were any disputes about those cases, perhaps the carpal tunnel. I was probably in grade school at that time, Your Honor. He worked there 31 years, as we talked about just a couple of minutes ago in the prior case. He had been diagnosed with bilateral carpal tunnel syndrome prior to 2007. I mean, the background overlaps, right? I mean, you know the consistent history. Yes, absolutely. In this situation, Dr. Gill testified, assuming he was using these tools on a regular basis, that it would aggravate carpal tunnel syndrome. He testified to what he did. There's some job descriptions that were put into evidence that I made as part of the appendix. They support that it was pretty hand-intensive work. He did have to flex on a regular basis according to the job descriptions. Based upon that information, carpal tunnel condition got worse and it necessitated treatment. When he had the diagnosis years before, there was no recommendation for surgery. So just based upon his job description, the written job descriptions, and the testimony of Dr. Gill, I believe that the only credible evidence in the record supports that there was a further aggravation of the condition that resulted in these treatments. Thank you. Thank you, Mr. Keith. Mr. O'Brien, you may respond. Thank you. Counsel, Your Honors, again, there's a burden of proof. He has to prove of aggravation because he says there's pre-existing, and they did the testing. He had the demyelination before. He still has the demyelination. He had filed this before, and he had settled it before, and that was pointed out by the arbitrator. We all know about the different manifestation dates for carpal tunnel. You choose one. He chose one back in the 1990s, and he settled his carpal tunnel back in the 1990s. There was no surgery. He still had it. Well, let me cut to the chase on this. According to them, he offered, other than his own subjective complaints of pain, he offered absolutely no evidence to establish that any new or exacerbated carpal tunnel condition manifested itself on August the 30th, 2007. Absolutely true. I mean, it's as simple as fines. That's exactly what they found. And even Gill talked about the fact that there was a medical testimony established that the pre-existing delineation, not a new condition, was shown on the post-accident reports, and everything he entered into was evidence. That's correct, and Dr. Gill, to be fair, was a little embarrassed because I had a lot more medical records on this gentleman than he did. And what he knew about this man was woefully inadequate. I had the prior EMG reports. He did not. And he had to admit that, oh, yeah, he had all of this. He could not give a good causal connection opinion. Because the whole history given to him of the work by Mr. Bockwitz was, it's strenuous. That was the only word that the doctor could use to describe this man's work. So a hypothetical was asked, and the hypothetical was not proved up at arbitration. Because one of the important things that was in that hypothetical was that he used vibratory tools on a regular basis. Vibratory tools could be grinders. The one we all think of is the jackhammers, things of this sort. There is no testimony whatsoever in this record of this man using vibratory tools. The hypothetical included things not in evidence, and it didn't include all those medical things that the doctor later discovered on cross-examination existed, including the extent of the preexisting condition, etc. The man did not prove that his job was repetitive. He said he did different things all the time. He used all kinds of different tools, and one day different from another. Every day was different. I cited the Williams case. This is not a man on an assembly line. This is not the lady in Bellwood who's folding clothes that she's taking out of the dryer for hours and hours and hours on end. This guy does different things. It's not a repetitive job. Maybe strenuous, but the doctor didn't say that strenuous alone would cause carpal tunnel. They didn't prove whether or not he was working in a hypo-flexed or a hypo-extended area, anything of that sort. They just didn't prove it up, and when they did it with the hypothetical, they didn't prove their hypothetical. Those are important facts. The Commission didn't buy it, and we would ask that it be affirmed. Thank you. Thank you, Counsel. Mr. Keith, you may reply. He did testify he used vibratory tools, but on occasion. There's no doubt about that. I think the rigged job descriptions do describe a lot of the hyper-flexion that was involved in the hand tools he used on a daily basis. So I think that there is evidence in the record to support he did do relatively repetitive and intensive work since his prior settlement. Now, whether there was any change between the EMGs pre- and post-accident, I don't know. I mean, I don't think there was any testimony as to whether there was a change in the numbers for that. I think Dr. Gill's opinion was based upon the understanding that he did do hand-intensive work. He had never been offered surgery previously. It had probably been 15 years since the settlement, and the condition had worsened in large part because of the activities he did. Thank you, Counsel, both, for your arguments. The narrative has been taken under advisement. This position shall be issued. The court will stand in recess until 9 o'clock tomorrow morning.